United States District Court
Southern District of Texas

**ENTERED**

May 12, 2025

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Jose Vasquez, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 4:23-cv-03620 |
| | § | |
| Bill Nelson, Administrator, National Aeronautics and Space Administration, | § § § | |
| | § | |
| *Defendant.* | § § | |

## <u>MEMORANDUM, RECOMMENDATION, AND ORDER</u>

Multiple motions are pending. First, Defendant Bill Nelson, as Administrator of the National Aeronautics and Space Administration ("NASA"), has filed a motion for summary judgment on all of Plaintiff Jose Vasquez's claims. Dkt. 33; *see also* Dkt. 40 & 41 (Vasquez's responses); Dkt. 48 (NASA's reply); Dkt. 55 (Vasquez's sur-reply). NASA also filed a motion to strike Vasquez's summary-judgment evidence. *See* Dkt. 47; *see also* Dkt. 50, 52, 54 (Vasquez's multiple responses). Vasquez filed a request for a settlement conference, Dkt. 44, in addition to multiple motions requesting that NASA be required to file the return receipt reflecting its certified mailing of the motion for summary judgment, Dkt. 46; Dkt. 49; Dkt. 53.

After reviewing the motions, responses, reply, the record, and the applicable law, the undersigned judge (1) strikes Vasquez's unauthorized sur-reply (Dkt. 55); (2) denies his requests for the certified mail receipts (Dkt. 46, 49, 53); and (3) recommends that NASA's motion for summary (Dkt. 33) be granted, and that all claims be dismissed with prejudice.

## Background

This is an employment dispute. Vasquez, who is Hispanic, alleges that his employer, NASA, committed various acts of discrimination and retaliation. His complaint laundry-lists numerous allegations that were raised in prior EEOC investigations. *See* Dkt. 1 at 3-6. Based on those allegations, Vasquez asserted claims for (1) race and national origin discrimination under Title VII of the Civil Rights Act of 1964; (2) age discrimination under the Age Discrimination in Employment Act ("ADEA"); (3) disability discrimination under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973; and (4) retaliation under all three statutes. *See id.* at 7-11.

About a month later, Vasquez's attorney filed a motion to withdraw as counsel, asserting that Vasquez had unilaterally filed a request to recuse the presiding District Judge, despite counsel's determination that such a motion was unwarranted. Dkt. 19. The Court granted the motion to withdraw and denied Vasquez's subsequent *pro se* motions to recuse the District Judge and the undersigned Magistrate Judge. Dkt. 23, 27, 28.

2

Under the Scheduling Order, discovery in this case closed on November 5, 2024. Dkt. 7 at 2. Thereafter, NASA filed a motion for summary judgment, asserting that Vasquez has no evidence supporting essential elements of his claims. *See* Dkt. 33. This prompted Vasquez to submit various filings (1) alleging that he had not received a copy of NASA's summary-judgment motion, Dkt. 35; (2) requesting information about the deadline for responding to the motion, Dkt. 36; (3) demanding a "fair trial" and "disapprov[ing] of any motions" to dismiss his claims, Dkt. 35; (4) requesting unspecified "accommodations" to assist his presentation of issues to this Court, Dkt. 37. The Court resolved all these motions. Dkt. 39 (directing NASA to serve all filings to Vasquez by mail and e-mail; granting Vasquez a two-week extension to file his summary-judgment response; explaining that Vasquez will not be entitled to a trial if summary judgment is granted; and denying Vasquez's request for accommodations).

Despite being granted until January 9, 2025 to file his responses to the motion for summary judgment, *see id.* at 2, Vasquez filed both an original and an amended response on December 26, 2024, Dkt. 40, 41. Notably, the amended response includes more than 900 pages of attachments. *See* Dkt. 41 at 15-135; Dkt. 41-1 at 1-126; Dkt. 41-2 at 1-153; Dkt. 41-3 at 1-151; Dkt. 41-4 at 1-157; Dkt. 41-5 at 1-152; Dkt. 41-6 at 1-68. Yet Vasquez does not cite any

specific page or page range of those attachments that allegedly supports the factual assertions made in his 14-page response brief. *See* Dkt. 41 at 1-15.

NASA filed an amended certificate of service for its motion for summary judgment, indicating that it had sent Vasquez a copy of its motion both by email and certified mail. Dkt. 45. In addition to filing a reply in support of its motion for summary judgment, Dkt. 48, NASA filed a motion to strike Vasquez's voluminous exhibits because he failed to produce any of those documents during discovery, *see* Dkt. 47, to which Vasquez filed two responses, Dkt. 50, 54.

Without obtaining leave of court, Vasquez also filed a sur-reply to NASA's summary-judgment reply brief. *See* Dkt. 55. Vasquez also submitted various filings complaining that NASA has not filed a return receipt for its certified mailing of the summary-judgment motion. Dkt. 46, Dkt. 49, Dkt. 53. These issues are ripe for resolution.

## Legal standard

Summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material if the issue it

addresses "could affect the outcome of the action." *Dyer v. Houston*, 964 F.3d 374, 379-80 (5th Cir. 2020) (quoting *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010)).

When resolving a motion for summary judgment, courts must view the facts and any reasonable inferences "in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010) (quotation omitted). "[T]he court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party …." *Union Pac. Res. Grp., Inc. v. Rhone-Poulenc, Inc.*, 247 F.3d 574, 584 (5th Cir. 2001). In addition, courts must credit all reasonable inferences from the evidence, without "weigh[ing] evidence or mak[ing] credibility findings." *Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 476 (5th Cir. 2022).

Notably, however, "[a] party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) (quotations and citations omitted). Instead, a non-movant must identify "specific evidence in the record" and "articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## Analysis

### I.     Procedural issues

#### A.     Vasquez's unauthorized sur-reply is stricken.

After the motion for summary judgment was fully briefed, Vasquez filed a "Response to Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment." Dkt. 55. This brief violates Court procedures, which forbid the filing of sur-replies without first obtaining leave of court. *See* Hon. Charles R. Eskridge III, Court Procedures § 17(f). Having reviewed Vasquez's submission, the Court finds no good cause for allowing yet another brief. Vasquez has already filed *two* responses to the motion for summary judgment, Dkt. 40, 41, plus another two submissions responding to NASA's motion to strike his evidence, Dkt. 52, 54. No more briefing is warranted.

#### B.     Vasquez was properly sent copies of court filings.

In numerous filings, Vasquez demands that NASA be required to file a copy of the certified mail receipt associated with its mailing of its motion for summary judgment to Vasquez. *See* Dkt. 46, 49, 53. Despite alleging that such proof is necessary to verify whether the motion was mailed to him, the record reflects that Vasquez was fully able to prepare and file his response to the motion for summary judgment. This is evident from Vasquez's amended response, where he attempts to refute all of NASA's grounds for summary judgment and submits over 900 pages of exhibits. *See* Dkt. 41.

Moreover, there is no dispute that NASA *also* sent its filing to Vasquez by email, just as the Court directed it to do. *See* Dkt. 39 at 1-2. The Court also gave Vasquez a two-week extension of time, i.e., until January 9, 2025, to prepare and submit his summary-judgment response. *See id.* at 2. Vasquez simply chose to file his responses earlier, on December 26, 2024. Dkt. 40, 41. Because Vasquez had ample actual notice of NASA's summary-judgment motion, his requests for the return receipts are denied.

## II.    Summary judgment motion

### A.    Vasquez misapprehends the summary judgment standard.

NASA's motion for summary judgment targets numerous requirements for Vasquez's claims. Most broadly, NASA argues, globally, that Vasquez has no evidence that he was discriminated or retaliated against because of race, color, age, national origin, or for engaging in protected activity. *See* Dkt. 33 at 26-27. As for particulars, NASA first argues that Vasquez cannot make a *prima facie* case of discrimination under Title VII, the ADEA, or the Rehabilitation Act with respect to nearly all his factual assertions. *See* Dkt. 33 at 13-17. For the remaining allegations that Vasquez was not selected for four specific positions, NASA argues that Vasquez cannot rebut NASA's legitimate, non-discriminatory reason for its decision. *See id.* at 25-26. Second, NASA contends that Vasquez has no evidence supporting a *prima facie* case of retaliation. *See id.* at 17-19. Third, NASA asserts that Vasquez's hostile work

environment claims fail because Vasquez has no evidence that he (1) was subjected to harassment based on his membership in a protected group; and (2) the harassment affected a term, condition, or privilege of his employment. *See id.* at 19-23.   And even assuming that a retaliatory hostile work environment claim is cognizable, NASA contends that Vasquez fails to show that he was harassed for engaging in any protected activity.  *See id.* at 23-25.

Vasquez's response reflects a fundamental misunderstanding of the burden of proof at this stage, as NASA aptly notes.  *See* Dkt. 48 at 2-4.  For instance, Vasquez complains that NASA has not "clearly provided the details" underlying *his own* allegations, which he insists makes it "impossible to evaluate whether these incidents are indeed non-adverse or if they demonstrate discrimination" based on race, color, age, or disability.  Dkt. 41 at 9; *see also id.* at 10 (including similar assertions with respect to ADEA and disability claims).  He similarly faults NASA for not "adequately address[ing] the context" of his retaliation claims.  *Id.* at 10.

Vasquez's position fails to engage NASA's arguments.  "Under federal law, ... it has long been the rule that when the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case."  *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir.

2017). NASA has done just that, by asserting that Vasquez lacks evidence on certain elements or requirements of his claims. As the non-movant, Vasquez must then identify "particular parts of materials in the record" that reflect a genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1)(A).

But Vasquez made no attempt to marshal the evidence. He simply attached more than 900 pages of documents to his summary judgment response, including assorted affidavits, deposition transcripts, email communications, and various discrimination complaints. *See* Dkt. 41 at 21-135; Dkt. 41-1 at 1-126; Dkt. 41-2 at 1-153; Dkt. 41-3 at 1-151; Dkt. 41-4 at 1-157; Dkt. 41-5 at 1-152; Dkt. 41-6 at 1-68. Nowhere does Vasquez's response cite, much less identify, a single page or portion of those documents. He merely states that his voluminous exhibits, globally, substantiate his discrimination and retaliation claims. *See* Dkt. 41 at 7 (incorporating "Exhibit D" and "87 exhibits"); *id.* at 8 (same).

Vasquez's generic reference to the exhibits, collectively, is ineffectual. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *see also Malacara v. Garber*, 353 F.3d 393, 404-05 (5th Cir. 2003) (affirming summary judgment where non-movant failed to mention specific evidence in his brief, even though it was contained in an exhibit). Rather, "[w]hen evidence

exists in the summary judgment record, but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016) (quotation omitted). "This rule extends to *pro se* plaintiffs such as [Vasquez]." *See id.*

Against that backdrop, the Court addresses each of NASA's challenges to Vasquez's claims. Given the conclusion below, the Court finds it unnecessary to resolve NASA's further contention that Vasquez's failure to produce his voluminous exhibits during discovery warrants striking them. *See* Dkt. 47 (motion to strike); Dkt. 52 (response); Dkt. 54 (further response).

**B.   Vasquez failed to raise a genuine issue of material fact on his discrimination claims.**

In his complaint, Vasquez laundry lists numerous incidents that allegedly constitute discrimination based on race/color, physical disability, or age. *See* Dkt. 1 at 3-6. Four concern positions for which Vasquez learned he was not selected between July 8, 2019 and August 6, 2019: (1) NBL1 Quality Assurance Representative; (2) OD111-Avionics and Software Office position; (3) Project Manager, Computer Resources System ("PMCRS"); and (4) Safety and Mission Assurance ("SMS"). *See id.* at 3-4 ¶¶ 16(2)-(3), (5)-(6). Another concerns his alleged removal from a position, on August 17, 2020, as "Chairman of the Emergency Management Control Systems (EMCS

Operational Review Board (EORB)." *Id.* at 5 ¶ 17(4).  The remainder mention

other acts and events, albeit lacking specifics other than dates:

- "[B]etween June 26, 2019 and September 8, 2019": denial of unspecified "reasonable accommodations";

- June 14, 2019: reassignment of co-worker's duties to Vasquez;

- July 24, 2019: unidentified "Supervisory AST" ignoring Vasquez's complaints regarding an unnamed coworker's "workplace violence";

- July 25, 2019: unnamed Supervisory AST describing unidentified coworker as "his boy";

- July 25, 2019, August 23, 2019, and September 14, 2019: denial of telework;

- August 14, 2019: Vasquez was told by a Human Resources representative of an accusation that Vasquez had pretended to kill a classmate and was overheard telling a coworker "Woods, body, leave it";

- August 15, 2019: Vasquez learned of unspecified "'untruthful' comments" by an unnamed Supervisory AST in his performance appraisal;

- August 26, 2019: another employee was told, either by an unspecified Supervisory AST or a Center Operations Directorate ("COD") member, that Vasquez was "not a 'team player'";

- November 27, 2019: HR representatives and the COD did not take "seriously" Vasquez's complaints about an unnamed coworker's "violent behaviors";

- March 2, 2020: coworker was given access to Vasquez's calendar;

- April 28, 2020 and June 5, 2020: Vasquez felt "undermined" when he was "not allowed to talk during meetings";

- June 10, 2020: unspecified "medical and race-related remarks" were made in Vasquez's 2019-2020 performance appraisal;

11

- June 10, 2020: management recommended that Vasquez retake training;

- June 10, 2020: Vasquez was asked "to get a mentor outside of JA";

- July 30, 2020: Vasquez was "singled out" for various improvements in his 2019-20 performance review "for the purpose of establishing a record of substandard performance";

- August 25, 2020: Vasquez was not allowed to perform an unspecified task for a customer's request for services that concerned a building assigned to Vasquez;

- October 1 and 2, 2020: the Acting Branch Chief "laughed at" and treated Vasquez "disrespectfully";

- October 19, 2020: Vasquez learned he was reassigned to a smaller workplace than his coworkers;

- December 14, 2020: Vasquez learned he was denied two requests for training courses that were identified during his performance review;

- February 1, 2021: Vasquez served as the "Acting Branch Chief for two weeks and two days," shorter than a coworker who held the position for three months;

- February 3, 2021: Supervisory AST "took over" Vasquez's project even though a customer had asked Vasquez "to work out a solution with the EA project engineers";

- February 10, 2021; Supervisor AST did not respond to Vasquez's emails, did not include him in one meeting, and "shut him down in a meeting";

- February 11, 2021: Supervisory AST "questioned" Vasquez's "Spanish accent and his English fluency";

- February 16, 2021: Supervisory AST "laughed" while requesting that Vasquez attend training;

- February 17, 2021: Supervisory AST did not include Vasquez in unspecified "crucial emails";

- February 23, 2021: Supervisory AST stated, "No more Rick!!!" to Vasquez and a coworker.

*See id.* at 3-6 ¶ 16(1), (4), (7)(b)-(m), ¶ 17(3)-(15).[1]  Two other allegations assert, without identifying the pertinent dates, that Vasquez was (1) "refused access to the Johnson Space Center" to perform his work; and (2) "was excluded from meetings and communications concerning buildings" within his purview.  *See id.* ¶ 17(1)-(2).  These allegations are addressed in turn below.

1.  <u>Vasquez has not made a *prima facie* showing of Title VII discrimination.</u>

With respect to Title VII, NASA argues that Vasquez has not made a *prima facie* showing that he was subjected to discrimination because of his race or color.  *See* Dkt. 33 at 13-15.   Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Because Vasquez neither argues nor demonstrates that he has direct evidence of discrimination, his claim is subject to the burden-shifting framework in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973).[2]   Under that

---

[1] One other, which asserted that an unnamed "Supervisory AST2" removed certain management duties from Vasquez "due to [Vasquez's] EEO complaint" is addressed *infra*, with respect to Vasquez's retaliation claim.  *See* Dkt. 1 at 4 ¶ 7(a).

[2] Only two allegations explicitly refer or relate to Vasquez's race: (1) the contention that "race-related remarks" were made on June 10, 2020, in connection with Vasquez's 2019-20 performance appraisal; and (2) a February 11, 2021 incident where

framework, Vasquez bears the "initial burden" to establish a "prima facie claim for race discrimination" by showing "that he (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 339 (5th Cir. 2021) (quoting *Stroy v. Gibson ex rel. Dep't of Veteran Affs.*, 896 F.3d 693, 698 (5th Cir. 2018)).

NASA claims that most of Vasquez's complaints do not qualify as adverse employment actions that affect the terms or conditions of his employment. But NASA also claims that Vasquez cannot show that similarly situated employees outside his protected group were not subjected to the same actions. That is the only requirement that the Court need address.

To qualify as similarly situated, the other employees' circumstances "must have been nearly identical." *Perez v. Tex. Dep't of Crim. Justice, Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004) (quotation omitted). Here,

---

a supervisor allegedly "questioned" Vasquez's "Spanish accent" and "English fluency." Vasquez has not, however, specified any evidence substantiating that these comments were even made, much less attempted to link them to an actionable employment decision. *See, e.g.*, *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 476 (5th Cir. 2015) (factors for determining if workplace comments constitute direct evidence). He therefore fails to proffer any evidence of direct race discrimination.

however, Vasquez has not identified any summary judgment evidence showing that any coworker of a different race or color was treated differently than him "under nearly identical circumstances." *See Moreno v. Microsoft Corp.*, 2024 WL 5098228, at *4 (S.D. Tex. Dec. 12, 2024) (granting summary judgment against employee on Title VII claims). This is true whether Vasquez complains about failures to act on his complaints about a coworker; the denial of telework, other requests, or the opportunity to serve as an "Acting Branch Chief" for a longer period; being subject to criticism, restrictions, or requirements for job activities; his alleged removal from a "Chairman" position; and his non-selection for four other positions. Instead, Vasquez attempts to invert the burden of proof by claiming that NASA failed to provide "details" underlying his own allegations. *See* Dkt. 41 at 10. Because he has not detailed specific evidence that coworkers outside his protected class were treated differently, Vasquez failed to raise a genuine issue of material fact on his Title VII discrimination claim.

2.   Vasquez has not made a *prima facie* case of discrimination under the ADEA.

Vasquez's failure to detail any relevant evidence similarly demonstrates that he has not made a *prima facie* case of age discrimination. The ADEA's requirements track those of Title VII, in that Vasquez had to show that he (1) is a member of the protected class; (2) he was qualified for the position;

(3) he suffered an adverse employment decision; and (4) he was either "replaced by someone younger or treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class)."[3] *See Smith v. City of Jackson, Miss.*, 351 F.3d 183, 188, 196 (5th Cir. 2003).

As with his Title VII claim, Vasquez fails to identify any evidence that he was treated disparately because of his age. He asserts—without citing evidence—that he applied for a "GS-14 position related to developing a crew transporter system, which was ultimately awarded to a younger candidate." *See* Dkt. 41 at 12; *see also id.* at 10 (claiming "a younger individual was ultimately selected" for an unspecified position, "as confirmed in the EEO documentation"). But the complaint listed four different positions. For three of them, NASA cited evidence confirming that no one was selected. *See* Dkt. 33-1 at 5-6 ¶¶ 12, 21, 25, 26 (NBL Quality Assurance Representative position was cancelled); Dkt. 33-2 at 7 ¶¶ 27-28 (no one selected for SMS reassignment); Dkt. 33-3 at 5-6 ¶¶ 13-15, 19 (no one selected for PMCRS reassignment, which was eliminated due to reductions). Although NASA's exhibits do not address

---

[3] The *prima facie* case is not limited to wrongful discharge based on age, as NASA inaccurately asserts. *See* Dkt. 33 at 15. But NASA's global challenge to Vasquez's lack of evidence that he was discriminated against based on age, *see id.* at 26, is properly framed as a challenge to Vasquez's ability to make a *prima facie* case under the ADEA.

the OD111-Avionics and Software Office position, Vasquez bears the burden to present evidence that a younger individual (i.e., outside his protected class) was chosen for that job. Yet Vasquez cites no record evidence showing which person (if any) was selected, much less any evidence substantiating that person's age. This defeats Vasquez's ADEA claim.

3.    Vasquez has not made a *prima facie* case of disability discrimination.

For analogous reasons, NASA is correct that Vasquez has presented no evidence of disability discrimination, whether based on a failure to accommodate or otherwise. As a federal employee, Vasquez's sole remedy hinges on the Rehabilitation Act. *See Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir. 1997). "The prima facie case of discrimination under the [Rehabilitation Act] is operationally identical to the test under the [Americans with Disabilities Act]." *Austin v. City of Pasadena*, 74 F.4th 312, 334 (5th Cir. 2023). That is, Vasquez must make a *prima facie* showing that "(1) he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *See E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quotation omitted).

As NASA notes, however, Vasquez cites no evidence indicating that he has a qualifying disability, much less that any employment action of which he complains bears a causal relationship to any such disability. *See* Dkt. 33 at 17.

17

At most, Vasquez asserts that he has "experienced significant mental health issues as a result of the discrimination faced since 2019 ...." Dkt. 41 at 9. But he does not substantiate those mental health issues. More fundamentally, his allegation does not show that the claimed discrimination occurred *because of* a claimed disability—rather than the other way around.

Vasquez's failure-to-accommodate theory has slightly different requirements, demanding proof that "(1) [he] is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. La. Dep't of Justice, Off. of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (quotations omitted). But NASA argues, and the Court agrees, that Vasquez's failure to substantiate any qualifying disability is equally fatal to this theory. In addition, Vasquez also identifies no evidence showing what accommodation(s) he requested, if anyone denied his request, and how that denial impacted Vasquez, if at all. Under either theory, Vasquez's disability claims are barred.

### C. Vasquez fails to identify any evidence supporting his hostile work environment claims.

Similar deficiencies preclude Vasquez's hostile work environment claims, whether premised on Title VII, the ADEA, or the Rehabilitation Act. For these claims, Vasquez would need to show, among other things, that (1) he

belongs to a protected group (e.g., race, color, national origin, sex, age, or disability); and (2) he was subjected to unwelcome harassment based on his protected classification. *See Arredondo v. Elwood Staffing Servs., Inc.*, 81 F.4th 419, 433 (5th Cir. 2023) (Title VII harassment, quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011) (ADEA); *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 506 & n.8 (5th Cir. 2002) (Rehabilitation Act).  To be actionable, the harassing behavior must be "sufficiently severe or pervasive" such that it "alter[s] the conditions of the victim's employment and creates an abusive environment ...." *See Arredondo*, 81 F.4th at 433 (cleaned up) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  In addition, the Fifth Circuit has "not recognized a retaliatory hostile work environment claim" but has assumed that the same *prima facie* requirements would apply.  *See Montgomery-Smith v. George*, 810 F. App'x 252, 258 (5th Cir. 2020) (per curiam).

As NASA correctly observes, Vasquez fails to marshal any evidence showing that he was subjected to actionable harassment based on any protected classification.  Dkt. 33 at 21-23.  NASA is equally correct that Vasquez has identified no evidence supporting a retaliatory harassment claim premised on his engagement in any protected activity, even assuming that such a claim is cognizable.  *See id.* at 23-24 (emphasizing the need to show a "close timing between an employee's protected activity and an adverse action

against him") (quoting *Feist v. La. Dep't of Justice, Off. of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013)).   Indeed, Vasquez identifies no evidence supporting his assertions, whether regarding a supervisor's alleged removal of management duties from Vasquez "due to [Vasquez's] EEO complaint," *see* Dkt. 1 at 4 ¶ 7(a), or anything else.   *See* Dkt. 41 at 11-12 (no citations to any evidence).   As a result, summary judgment is warranted on his hostile work environment claims.

> **D.   Vasquez similarly fails to substantiate his retaliation claims.**

Vasquez's failure to identify supporting evidence is equally fatal to his retaliation claim, whether based on Title VII, the ADEA, or the Rehabilitation Act.   Because Vasquez does not present or maintain he has direct evidence of retaliation, his claims are subject to the *McDonnell Douglas* framework, which requires *prima facie* proof that (1) the plaintiff engaged in protected activity; (2) the employer took adverse action against the plaintiff; (3) there is a causal connection between the two.   *See McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007) (Title VII); *see also January v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023) (ADEA and Rehabilitation Act).   If the plaintiff meets his initial burden, then the employer "must come forward with a legitimate, non-discriminatory reason for the adverse action."   *See January*, 74 F.4th at 653.   Once the employer does so, the plaintiff "must then show 'sufficient

evidence that the proffered reason is a pretext for retaliation.'" *Id.* (quoting *Nall v. BNSF Ry.*, 917 F.3d 335, 340 (5th Cir. 2019)).

Again, Vasquez's response does not attempt to identify any evidence in the voluminous record that supports these requirements. *See* Dkt. 41 at 12. He simply declares that NASA's no-evidence challenge "fail[s] to address the broader context of discriminatory practices and retaliation" that he "experienced." *See id.* But Vasquez has the burden to raise a genuine issue of material fact on each requirement of his retaliation claims. Because Vasquez failed to do so, this Court should grant summary judgment on those claims.

## Recommendation and Order

For the foregoing reasons, it is **ORDERED** that Plaintiff Jose Vasquez's unauthorized sur-reply (Dkt. 55) is **STRICKEN**.

It is further **ORDERED** that Vasquez's requests to compel submission of certified mail receipts (Dkt. 46, 49, 53) are **DENIED**.

It is further **RECOMMENDED** that the motion for summary judgment filed by Bill Nelson, Administrator, National Aeronautics and Space Administration (Dkt. 33) be **GRANTED**, and that NASA's motion to strike Vasquez's evidence (Dkt. 47) be **DENIED AS MOOT**.

It is further **RECOMMENDED** that this Court enter a separate final judgment directing that all of Plaintiff Jose Vasquez's claims be **DISMISSED WITH PREJUDICE**.

The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).

Signed on May 12, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge